# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## BUHL v CITY OF OAK PARK

Docket No. 160355. Argued January 6, 2021 (Calendar No. 3). Decided June 9, 2021.

Jennifer Buhl brought an action in the Oakland Circuit Court against the city of Oak Park, alleging that defendant had a duty to maintain its sidewalks in reasonable repair under MCL 691.1402a of the governmental tort liability act (the GLTA), MCL 691.1401 *et seq.*, and that defendant breached its duty by failing to inspect or repair a sidewalk that had a raised crack. Plaintiff tried to step over the crack in the sidewalk; however, she did not notice that the sidewalk was uneven on the other side of the crack, and she fell and fractured her left ankle. Plaintiff alleged that the injuries she sustained in the fall were a direct result of defendant's negligence. After plaintiff was injured but before she filed her complaint, the Legislature passed 2016 PA 419, which went into effect on January 4, 2017. 2016 PA 419 amended MCL 691.1402a to add a new subsection, MCL 691.1402a(5), which allows a municipality to assert any defense available under the common law with respect to a premises-liability claim, including, but not limited to, a defense that the condition was open and obvious. Defendant moved for summary disposition, arguing that MCL 691.1402a(5) applied retroactively and that the defect in the sidewalk where plaintiff fell was open and obvious. The trial court, Phyllis C. McMillen, J., held that MCL 691.1402a(5) applied retroactively and that defendant could raise the open and obvious danger doctrine as a defense. The trial court also held that the defect in the sidewalk was open and obvious as a matter of law and granted defendant's motion for summary disposition. Plaintiff appealed, and the Court of Appeals, O'BRIEN, P.J., and TUKEL, J. (LETICA, J., dissenting), affirmed, holding that MCL 691.1402a(5) applied retroactively and that plaintiff's claim was therefore barred by the open and obvious danger doctrine. 329 Mich App 486 (2019). Judge LETICA dissented, concluding that retroactive application was inappropriate because the Legislature never manifested an intent for MCL 691.1402a(5) to apply retroactively and because doing so would impair plaintiff's vested rights. Plaintiff sought leave to appeal in the Supreme Court, and the Supreme Court granted the application. 505 Mich 1023 (2020).

In an opinion by Justice BERNSTEIN, joined by Chief Justice MCCORMACK and Justices ZAHRA (except as to Part III(C)), VIVIANO, CLEMENT (except as to Part III(C)), and WELCH, the Supreme Court *held*:

MCL 691.1402a(5) does not apply retroactively; it may only be applied to causes of action that accrued after the effective date of the amendment. MCL 691.1402a provides that

municipalities have a duty to maintain sidewalks in reasonable repair. 2016 PA 419, which went into effect on January 4, 2017, amended MCL 691.1402a to add a provision, MCL 691.1402a(5), that grants municipalities the right to raise the open and obvious danger doctrine as a defense in premises-liability cases. Importantly, MCL 691.1402a(5) was not enacted until after the incident in this case took place. To determine whether MCL 691.1402a(5) should be applied retroactively, the primary and overriding rule is that legislative intent governs; all other rules of construction and operation are subservient to this principle. The framework set forth in *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26 (2014), is used to conduct this inquiry into the Legislature's intent: first, the court considers whether there is specific language providing for retroactive application; second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event; third, in determining retroactivity, the court must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past; and finally, a remedial or procedural act not affecting vested rights may be given retroactive effect when the injury or claim is antecedent to the enactment of the statute. Under the first factor, nothing in the plain language of the statute suggested that MCL 691.1402a(5) was intended to apply retroactively; rather, the amendment was given immediate effect without further elaboration. Standing alone, the phrase "[i]n a civil action" in MCL 691.1402a(5) was too vague to evince an intent to apply the amendment retroactively. Had the Legislature intended to make the open and obvious danger defense available in any civil action filed after the amendment became effective, it could have said so. Accordingly, the first factor did not support retroactive application. The second factor did not apply in this case because MCL 691.1402a(5) does not pertain to a specific antecedent event. Under the third factor, because plaintiff's claim had already accrued on the day she was injured, the retroactive application of MCL 691.1402a(5) would effectively rewrite history as to the duty defendant owed plaintiff by absolving defendant of its duty to maintain public sidewalks in reasonable repair. This is precisely what the third factor disallows when it rejects laws that create new obligations, impose new duties, or attach new disabilities with respect to transactions or considerations already past. Accordingly, the third factor did not favor retroactive application. Under the fourth factor, retroactive application in this case would relieve defendant of the duty it owed to maintain its sidewalk in reasonable repair. Accordingly, the fourth factor did not favor retroactive application. The Court of Appeals relied on *Brewer v A D Transp Express, Inc*, 486 Mich 50 (2010), when it reached the question whether the amendment was remedial or procedural in nature. Through its analysis of *Brewer*, the Court of Appeals erroneously created a new principle called the "*Brewer* restoration rule" and then relied on this principle to find that the fourth *LaFontaine* factor favored retroactive application of MCL 691.1402a(5). The *Brewer* restoration rule disregards the general presumption that statutes are intended to apply prospectively absent the existence of clear legislative intent to the contrary; thus, applying the *Brewer* restoration rule would effectively require that courts ignore the first *LaFontaine* factor in its entirety. Such a conclusion would run contrary to the robust body of caselaw that applies the *LaFontaine* factors. The *LaFontaine* factors were not altered or abandoned in favor of the *Brewer* restoration rule. Accordingly, MCL 691.1402a(5) could not be applied retroactively in this case, and defendant could not avail itself of the open and obvious danger doctrine as a defense to plaintiff's negligence claim.

Reversed and remanded to the Oakland Circuit Court for further proceedings.

Justice VIVIANO, concurring, agreed with the result the majority reached and with much of its analysis but wrote separately because he believes that the current methodology for assessing whether a statute is retroactive is flawed and would like to clarify the area of law pertaining to retroactivity. He would define a statute as retroactive if it seeks to regulate conduct that occurred before its passage. To determine if a statute meets this standard, he would do the same thing courts do with every other statutory interpretation question: discern the ordinary meaning of the text to determine whether it purports to regulate such conduct, keeping in mind the strong presumption against retroactivity. Only if the meaning of the text remains uncertain should the other principles potentially come into play. In this case, for instance, the text was clear, and therefore the analysis would stop there. The most significant problem with the current approach of applying the *LaFontaine* factors is that this approach does not begin and end with the text, as interpreted in light of the longstanding presumption against retroactivity. When the text answers the interpretive question, any approach that forces courts to carry the analysis beyond the text is an invitation to mischief. Finally, Justice VIVIANO also agreed with the majority that the Court of Appeals' creation of the *Brewer* restoration rule had no basis in Michigan's caselaw; the rule is premised on the improper notion that retroactivity can flow from the Legislature's unstated intentions.

Justice CLEMENT, joined by Justice ZAHRA, concurring in part and concurring in the judgment, agreed completely with the majority's result and joined most of its analysis of the *LaFontaine* retroactivity factors except for Part III(C), which addressed the *Brewer* restoration rule. The retroactivity analysis could and should have ended with the determination that the Court of Appeals erred when it held that MCL 691.1402a(5) satisfied the third *LaFontaine* factor. Justice CLEMENT expressed no view regarding the Court of Appeals' creation of the *Brewer* restoration rule but did not believe that it merited further review.

Justice CAVANAGH did not participate because of her prior involvement as counsel for a party.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 9, 2021

S T A T E   O F   M I C H I G A N

SUPREME COURT

JENNIFER BUHL,

 Plaintiff-Appellant,

v

No. 160355

CITY OF OAK PARK,

 Defendant-Appellee.

BEFORE THE ENTIRE BENCH (except CAVANAGH, J.)

BERNSTEIN, J.

This case concerns a negligence claim governed by the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. The specific question before us is whether a GTLA amendment that went into effect after plaintiff's claim accrued but before plaintiff filed her complaint can be retroactively applied. We hold that the amended provision does not apply retroactively. Accordingly, we reverse the judgment of the Court of Appeals and remand

this case to the circuit court for reinstatement of plaintiff's claim of negligence against defendant.

## I. FACTS AND PROCEDURAL HISTORY

On May 4, 2016, plaintiff and her husband went to a party store in Oak Park, Michigan. As she was walking, plaintiff saw a raised crack in the sidewalk outside the store and tried to step over it. Because plaintiff did not notice that the sidewalk was uneven on the other side of the crack, she fell and fractured her left ankle.

On January 31, 2017, plaintiff sued defendant, the city of Oak Park, under the "sidewalk exception" to governmental immunity, MCL 691.1402a. Plaintiff alleged that MCL 691.1402a imposes a duty on municipalities to maintain sidewalks in reasonable repair and that defendant breached its duty by failing to inspect or repair the sidewalk and maintain it in a reasonably safe condition. Plaintiff argued that the injuries she sustained in the fall were a direct result of defendant's negligence.

After plaintiff was injured but before she filed her complaint, the Legislature passed 2016 PA 419, which went into effect January 4, 2017. 2016 PA 419 amended MCL 691.1402a to add a new subsection, MCL 691.1402a(5). This new subsection allows a municipality to assert "any defense available under the common law with respect to a premises liability claim, including, but not limited to, a defense that the condition was open and obvious." MCL 691.1402a(5). Defendant subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that MCL 691.1402a(5) applied retroactively and that the defect in the sidewalk where plaintiff fell was open and obvious. The trial court agreed that MCL 691.1402a(5) should be applied retroactively and held that

2

defendant could raise the open and obvious danger doctrine as a defense. The trial court also held that the defect in the sidewalk was open and obvious as a matter of law and granted defendant's motion for summary disposition.

Plaintiff appealed the trial court's ruling, and the Court of Appeals affirmed in a split published decision. *Buhl v Oak Park*, 329 Mich App 486; 942 NW2d 667 (2019). The majority held that MCL 691.1402a(5) applied retroactively and that plaintiff's claim was therefore barred by the open and obvious danger doctrine. *Id*. at 519-522. Conversely, the dissent concluded that retroactive application was inappropriate because the Legislature never manifested an intent for MCL 691.1402a(5) to apply retroactively and because doing so would impair plaintiff's vested rights. *Id*. at 524-525, 537-538 (LETICA, J., dissenting).

Plaintiff timely sought leave to appeal in this Court. On April 17, 2020, this Court granted leave to appeal. *Buhl v Oak Park*, 505 Mich 1023 (2020).

## II. STANDARD OF REVIEW

The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10). We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Honigman Miller Schwartz & Cohn, LLP v Detroit*, 505 Mich 284, 294; 952 NW2d 358 (2020). When reviewing a motion brought under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion." *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 211-212; 934 NW2d 713 (2019) (quotation marks and citations omitted). Summary disposition is appropriate when no genuine issues of material fact exist. *El-*

3

*Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

This case also concerns the statutory interpretation and retroactive application of amended statutes. We review both these matters de novo. *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014).

## III. ANALYSIS

The GTLA protects municipalities from tort liability when they are engaged in governmental functions, unless a statutory exception applies to limit this immunity. *Yono v Dep't of Transp*, 499 Mich 636, 645-646; 885 NW2d 445 (2016). A governmental function is an "activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). One such governmental function is the maintenance of sidewalks. MCL 691.1402a(1).

As noted earlier, MCL 691.1402a has been amended to add a provision that grants municipalities the right to raise the open and obvious danger doctrine as a defense in premises-liability cases. Compare MCL 691.1402a, as amended by 2012 PA 50, to MCL 691.1402a, as amended by 2016 PA 419. The current version of MCL 691.1402a states, in pertinent part:

> (1) A municipal corporation in which a sidewalk is installed adjacent to a municipal, county, or state highway shall maintain the sidewalk in reasonable repair.

> * * *

> (5) In a civil action, a municipal corporation that has a duty to maintain a sidewalk under subsection (1) may assert, in addition to any other

4

defense available to it, any defense available under the common law with respect to a premises liability claim, including, but not limited to, a defense that the condition was open and obvious.

Because MCL 691.1402a(5) was not enacted until after the incident in this case took place, the outcome here turns on whether this provision applies retroactively. We hold that it does not and that MCL 691.1402a(5) may only be applied to causes of action that accrued after the effective date of the amendment. In this case, because plaintiff's cause of action accrued before the effective date of MCL 691.1402a(5), the amendment may not be applied retroactively to bar her claim against defendant.

When determining whether a statute should be applied retroactively or prospectively, " 'the primary and overriding rule is that legislative intent governs. All other rules of construction and operation are subservient to this principle.' " *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001) (citation and brackets omitted). In conducting this inquiry into the Legislature's intent, we follow the framework set forth in *LaFontaine*, which states:

> First, we consider whether there is specific language providing for retroactive application. Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. [*LaFontaine*, 496 Mich at 38-39 (citations omitted).]

These factors are colloquially known as the *LaFontaine* factors. As an initial matter, we note that the second factor does not apply to this issue because MCL 691.1402a(5) does not pertain to a specific antecedent event. *In re Certified Questions from US Court of*

5

*Appeals for the Sixth Circuit*, 416 Mich 558, 571; 331 NW2d 456 (1982). Therefore, our examination of MCL 691.1402a(5) is confined to a review of the first, third, and fourth *LaFontaine* factors.

## A. EXPRESS DESIGNATION

The first *LaFontaine* factor addresses whether there is specific language in the statute that indicates whether it should be applied retroactively. *Id*. at 570-571. "Statutes are presumed to apply prospectively unless the Legislature clearly manifests the intent for retroactive application." *Johnson v Pastoriza*, 491 Mich 417, 429; 818 NW2d 279 (2012). As this Court has noted, "the Legislature has shown on several occasions that it knows how to make clear its intention that a statute apply retroactively." *Lynch*, 463 Mich at 584. In this case, nothing in the plain language of the statute suggests that MCL 691.1402a(5) was intended to apply retroactively. To the contrary, the amendment was given immediate effect without further elaboration. Furthermore, the amendment makes no mention of whether it applies to a cause of action that had already accrued before its effective date. Although defendant argues that the Legislature clearly expressed its intent to apply the amendment retroactively by prefacing the availability of the open and obvious danger doctrine as a defense with the phrase "[i]n a civil action," we disagree. If the Legislature had intended to make the open and obvious danger defense available in *any* civil action filed after the amendment became effective, it could have said so. Standing alone, we find the phrase "[i]n a civil action" too vague to evince an intent to apply the amendment retroactively. If we were to accept defendant's argument, it would nevertheless remain unclear whether the amendment applied in all civil actions pending in the courts as of

6

January 4, 2017, or only to actions filed on or after that date. But the Legislature knows how to make that distinction. For example, when the Legislature amended the GTLA in 1986, it clearly stated that one newly added provision "appl[ied] to cases filed on or after July 1, 1986." See 1986 PA 175, § 3. In this case, there is simply no indication in the text that the Legislature intended for the amendment to be applied retroactively; accordingly, the first factor does not support retroactive application.

## B. RIGHTS AND DUTIES

According to the third *LaFontaine* factor, a statute or amendment may not be applied retroactively if doing so would "take[] away or impair[] vested rights acquired under existing laws, or create[] a new obligation and impose[] a new duty, or attach[] a new disability with respect to transactions or considerations already past." *In re Certified Questions*, 416 Mich at 571 (quotation marks and citation omitted).

As a general matter of premises-liability law, we have held that "the open and obvious doctrine should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). In *Jones v Enertel, Inc*, 467 Mich 266, 268; 650 NW2d 334 (2002), we held that "municipalities have an obligation, if necessary, to actively perform repair work to keep such sidewalks in reasonable repair" and that this duty is "a greater duty than the duty a premises possessor owes to invitees under common-law premises liability principles." As a result, under *Jones* it was the affirmative duty of a municipality "to maintain their sidewalks on public highways in

7

reasonable repair," without regard to the openness or obviousness of any defects. *Id.* (emphasis omitted).

Although the application of MCL 691.1402a(5) would not automatically extinguish plaintiff's claim, the subsequent application of the open and obvious danger doctrine would result in the dismissal of plaintiff's lawsuit because retroactive application would relieve defendant of the legal duty it owed to plaintiff at the time the injury occurred. In other words, because plaintiff's claim had already accrued on the day she was injured, the retroactive application of MCL 691.1402a(5) would effectively rewrite history as to the duty defendant owed plaintiff by absolving defendant of its duty to maintain public sidewalks in reasonable repair. This is precisely what the third factor disallows when it rejects laws that create new obligations, impose new duties, or attach new disabilities with respect to transactions or considerations already past. *In re Certified Questions*, 416 Mich at 571. Thus, we find that the third factor does not favor retroactive application of MCL 691.1402a(5).

Under the fourth *LaFontaine* factor, a statute that can be characterized as merely remedial or procedural should generally be given retroactive application. *LaFontaine*, 496 Mich at 39, 41. Where a statute "imposes a new substantive duty and provides a new substantive right that did not previously exist . . . it cannot be viewed as procedural, and the presumption against retroactivity applies." *Kia Motors America, Inc v Glassman Oldsmobile Saab Hyundai, Inc*, 706 F3d 733, 740 (CA 6, 2013). Conversely, then, a newly enacted statute or amendment should not be retroactively applied if doing so would relieve a party of a substantive duty. Since retroactive application here would relieve defendant of the duty it owed to maintain its sidewalk in reasonable repair, as discussed in our analysis

8

of the third *LaFontaine* factor, we hold that the fourth factor also does not favor retroactive application.

## C. THE "*BREWER* RESTORATION RULE"

Because the Court of Appeals majority held that MCL 691.1402a(5) satisfied the third *LaFontaine* factor, the Court of Appeals majority then reached the question whether the amendment was remedial or procedural in nature under the fourth *LaFontaine* factor. In so doing, the Court of Appeals majority relied on this Court's opinion in *Brewer v A D Transp Express, Inc*, 486 Mich 50; 782 NW2d 475 (2010). *Buhl*, 329 Mich App at 508. *Brewer* did not involve the application of the GTLA; rather, *Brewer* regarded the retroactive application of a statutory amendment that affected jurisdiction in workers' compensation cases. *Brewer*, 486 Mich at 57. Through its analysis of *Brewer*, the Court of Appeals majority created a new principle called the "*Brewer* restoration rule" and then relied on this principle to find that the fourth *LaFontaine* factor also favored retroactive application of MCL 691.1402a(5). *Buhl*, 329 Mich App at 508. Although we disagree with the conclusion that MCL 691.1402a(5) satisfies the third *LaFontaine* factor and could end our analysis here, the Court of Appeals' creation of the so-called *Brewer* restoration rule introduces a new element to the fourth *LaFontaine* factor that merits further review.

In *Brewer*, this Court observed that the statutory amendment at issue did not restore the state of workers' compensation law to the status quo that existed before this Court issued *Karaczewski v Farbman Stein & Co*, 478 Mich 28; 732 NW2d 56 (2007),[1] a

---

[1] Overruled in part by *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455 (2010).

particularly important ruling concerning jurisdiction in workers' compensation cases. *Brewer*, 486 Mich at 54-55, 57. Regarding *Karaczewski*, the *Brewer* Court stated:

> Further undermining any notion of a legislative intent to apply the amendment . . . retroactively is the fact that, although the Legislature adopted the amendment after our decision in *Karaczewski*, it did not reinstate the pre-*Karaczewski* state of the law. On the contrary, the amendment . . . created an entirely new jurisdictional standard . . . . That is, this amendment did not restore the status quo before *Karaczewski* . . . but instead created a new rule . . . . [*Brewer*, 486 Mich at 57 (emphasis omitted).]

Put simply, *Karaczewski* had changed the state of workers' compensation law, but instead of rolling back the change introduced in *Karaczewski*, the amendment at issue in *Brewer* created a new rule. This Court therefore concluded that there was no evidence of legislative intent for the amendment to be applied retroactively.

In the instant case, the Court of Appeals majority found that the converse must also be true, such that if the amendment had rolled back the change introduced in *Karaczewski*, then the amendment would have applied retroactively. *Buhl*, 329 Mich App at 507. Specifically, the majority stated that "[t]he obvious teaching of this aspect of *Brewer* is that if the [amendment] . . . had *restored* the pre-*Karaczewski* status quo, then the new enactment would have applied retroactively." *Id.* (emphasis added). This is the crux of the Court of Appeals majority's *Brewer* restoration rule. *Id.* at 508.

The Court of Appeals majority then applied this new rule to MCL 691.1402a(5). The majority likened *Karaczewski* to *Jones*, 467 Mich at 266, concerning a municipality's use of the open and obvious danger doctrine. *Buhl*, 329 Mich App at 513-514. As previously discussed, the *Jones* Court held that "the open and obvious doctrine of common-law premises liability cannot bar a claim against a municipality under MCL 691.1402(1)."

10

*Jones*, 467 Mich at 269.  Applying its *Brewer* restoration rule, the majority reasoned that

the Legislature enacted MCL 691.1402a(5) to supersede *Jones*.  *Buhl*, 329 Mich App at

514.  In other words, because the newly enacted MCL 691.1402a(5) rolled back the change

in *Jones*, the majority reasoned that *Brewer* compelled a finding that MCL 691.1402a(5)

was intended to apply retroactively.[2]

However, the *Brewer* Court did not create such a restoration rule.  When read in

context, it is clear that the *Brewer* Court merely mentioned the pre-*Karaczewski* status quo

as support for the conclusion that the Legislature had not intended for the amendment to

be applied retroactively.  *Brewer*, 486 Mich at 55-58.  Furthermore, the *Brewer* Court only

discussed *Karaczewski* in the context of the first *LaFontaine* factor and never cited

*Karaczewski*—or any sort of "restoration rule"—in the context of the fourth *LaFontaine*

factor.  In this case, the Court of Appeals majority relied on the *Brewer* Court's analysis of

---

[2] We find no support for the Court of Appeals majority's conclusion that the Legislature enacted MCL 691.1402a(5) to supersede *Jones* or restore the GTLA to a pre-*Jones* state. There is no reference to *Jones* in either the plain text of MCL 691.1402a(5) or the legislative history pertaining to 2016 PA 419.  The lack of any discussion of *Jones* suggests that the Legislature did not take *Jones* into consideration when it enacted MCL 691.1402a(5).  It also bears noting that *Jones* was decided in 2002, which was 14 years before 2016 PA 419 became law.  This is a far greater passage of time than the two years between *Karaczewski* and the statutory amendments at issue in *Brewer*.  Generally, "when a legislative amendment is enacted soon after a controversy arises regarding the meaning of an act, it is logical to regard the amendment as a legislative interpretation of the original act." *Adrian Sch Dist v Mich Pub Sch Employees Retirement Sys*, 458 Mich 326, 337; 582 NW2d 767 (1998) (quotation marks and citation omitted).  Such is not the case here, in which more than a decade has passed since this Court decided *Jones*.  Simply put, there is no basis for the Court of Appeals' conclusion that the Legislature amended MCL 691.1402a(5) to supersede *Jones*.  At most, MCL 691.1402a(5) appears to have been enacted to give municipalities another defense against slip-and-fall claims, with no apparent thought for *Jones*.

the first *LaFontaine* factor in its own analysis of the fourth *LaFontaine* factor. By doing so, the majority incorrectly concluded that this Court intended to create the *Brewer* restoration rule, and the majority subsequently erred by finding that the fourth *LaFontaine* factor favors retroactive application of MCL 691.1402a(5).

To the extent that the passage in *Brewer* that discusses *Karaczewski* is mere dicta, the majority's creation of a new legal rule on the basis of extrapolations from that dicta is unfounded and erroneous. The *Brewer* restoration rule disregards the general presumption that statutes are intended to apply prospectively absent the existence of clear legislative intent to the contrary; thus, applying the *Brewer* restoration rule would effectively require that we ignore the first *LaFontaine* factor in its entirety. Such a conclusion would run contrary to the robust body of caselaw in which we have applied the *LaFontaine* factors. We decline to alter or abandon the *LaFontaine* factors in favor of the *Brewer* restoration rule. We therefore conclude that the Court of Appeals majority erred in its creation of the *Brewer* restoration rule.

In sum, we find that none of the applicable *LaFontaine* factors supports retroactive application of MCL 691.1402a(5). Consequently, we find that MCL 691.1402a(5) may not be applied retroactively in this case, and therefore defendant cannot avail itself of the open and obvious danger doctrine as a defense to plaintiff's negligence claim.

## IV. CONCLUSION

We hold that MCL 691.1402a(5) does not apply retroactively to causes of action that accrued before the amendment became effective. For the reasons outlined in this opinion, we reverse the judgment of the Court of Appeals and remand this case to the

12

Oakland Circuit Court for further proceedings consistent with this opinion.  We do not retain jurisdiction.

<div style="margin-left:50%">

Richard H. Bernstein
Bridget M. McCormack
Brian K. Zahra (except as to
        Part III(C))
David F. Viviano
Elizabeth T. Clement (except as to
        Part III(C))
Elizabeth M. Welch

</div>

JENNIFER BUHL,

      Plaintiff-Appellant,

v                                  No. 160355

CITY OF OAK PARK,

      Defendant-Appellee.

_____

VIVIANO, J. (*concurring*).

I agree with the result the majority reaches and with much of its analysis. I write separately because I think it is time to clarify this area of the law, beginning with the basic definition of "retroactivity" and including, most importantly, our current test used to interpret whether a statute applies retroactively. Very simply, I would define a statute as retroactive if it seeks to regulate conduct that occurred before its passage. To determine if a statute meets this standard, I would do the same thing we do with every other statutory interpretation question we face: discern the ordinary meaning of the text. But in our current test, the text is just one of four apparently equal principles.[1] I do not believe those other principles are relevant when the text is clear. Only if the meaning of the text remains

_____

[1] The other principles, discussed more below, include that the statute is not retroactive simply because it relates to pre-enactment events, that retroactive statutes impair vested rights or create new duties relating to past transactions, and that procedural or remedial statutes that do not affect vested rights may be given retroactive effect. *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 38-39; 852 NW2d 78 (2014).

uncertain should those principles potentially come into play. Here, the text is clear, and I agree with the majority that the statute does not apply retroactively in this case.

## I. DEFINING RETROACTIVITY

Interpreting a statute to determine whether it is retroactive requires knowing what retroactivity is, i.e., knowing when a statute's application in a given case is retroactive. Only then can a court know whether the language of the statute supports that application. Thus, in reassessing this topic, it is necessary to start with the meaning of retroactivity.

The canonical definition, which we have recognized, comes from Justice Joseph Story, who wrote that a retroactive statute is one that "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . ." *Society for Propagation of the Gospel v Wheeler*, 22 F Cas 756, 767; 2 Gall 105 (CCDNH, 1814); see also *Hughes v Judges' Retirement Bd*, 407 Mich 75, 85; 282 NW2d 160 (1979). In applying this definition, the United States Supreme Court has stated that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law." *Landgraf v USI Film Prod*, 511 US 244, 269; 114 S Ct 1483; 128 L Ed 2d 229 (1994). Instead, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id*. at 269-270.

2

In his concurrence in *Landgraf*, Justice Scalia proposed a clearer standard for defining and determining retroactivity: "The critical issue, I think, is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates." *Id*. at 291 (Scalia, J., concurring in the judgment). The key, to Justice Scalia, was the "statute's actual operation on regulated parties . . . ." *Vartelas v Holder*, 566 US 257, 277; 132 S Ct 1479; 182 L Ed 2d 473 (2012) (Scalia, J., dissenting). To assess this, it is necessary to identify a "reference point—a moment in time to which the statute's effective date is either subsequent or antecedent." *Id*. This "reference point" occurs when "the party does what the statute forbids or fails to do what it requires." *Id*. So if the individual engages "in the primary regulated activity *before* the statute's effective date, then the statute's application *would* be retroactive. But if a person engages in the primary regulated activity *after* the statute's effective date, then the statute's application is prospective only." *Id*.

Justice Scalia and Bryan Garner give the helpful example of a statute that eliminates the common-law disability of a wife to testify against her husband at his criminal trial. See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 263 (discussing this example). If this statute is passed after the husband committed the crime but before the trial occurs, applying it at trial is not retroactive: the statute governs trial conduct—the admission of testimony—and the trial occurred after the statute was enacted. *Id*.

But it is not simply because the statute mentions the court processes that the act's application would be prospective—rather, it is because the statute actually *regulates* an aspect of the trial, i.e., the admission of evidence. As a further example, consider the statute

3

at issue in *Martin v Hadix*, which limited the amount of attorney fees that could be awarded in prisoner litigation under another statute, 42 USC 1988. *Martin v Hadix*, 527 US 343, 362; 119 S Ct 1998; 144 L Ed 2d 347 (1999) (Scalia, J., concurring in part and concurring in the judgment). In applying his conception of retroactivity, Justice Scalia's concurrence opined that the statute would be retroactive if it applied to work that an attorney had already completed and for which fees were payable. *Id*. at 363. This would occur before the actual award of the legal fees at trial, which is what the statute discusses. According to Justice Scalia, if the new statute was "viewed in isolation," the "retroactivity event" would be the judicial award of fees. But because the new statute limited the former statute's fee award, it was the former statute that determined the relevant retroactivity event, "the doing of the [legal] work for which the incentive [of fees] was offered." *Id*. at 364. Thus, retroactivity is determined by the substance of what the statute regulates or refers to.

I believe that this articulation of retroactivity is clear, easy to apply, and captures how people actually conceive of retroactivity. *Collins English Dictionary* (online ed) (defining retroactivity as "having application to or effect on things done prior to its enactment").[2] Accordingly, I would adopt it in place of our current definition, which, as discussed below, muddies the waters by introducing the elusive concept of vested rights into what should be a straightforward interpretation of the text. A retroactive statute, therefore, is one that regulates conduct that occurred before the statute became effective.

---

[2] *Collins English Dictionary* (online ed) <https://www.collinsdictionary.com/us/dictionary/english/retroactive> (accessed April 2, 2021) [https://perma.cc/K4DV-QKSC].

Under this conception of retroactivity, I would conclude that applying the statute here is retroactive. The statutory amendment at issue states as follows:

> In a civil action, a municipal corporation that has a duty to maintain a sidewalk under [MCL 691.1402a(1)] may assert, in addition to any other defense available to it, any defense available under the common law with respect to a premises liability claim, including, but not limited to, a defense that the condition was open and obvious. [MCL 691.1402a(5).]

At first glance, it might look like the statute governs conduct that occurred, in this case, after the statute's effective date. Specifically, it could be argued that the statute regulates the litigation process by prescribing the defenses a defendant can raise. And, under this line of thinking, since the statute was passed and became effective before plaintiff filed this lawsuit, applying the statute here does not constitute a retroactive application at all.

Such an argument exalts form over substance. Similarly to *Martin*, 527 US at 363-364 (Scalia, J., concurring in part and concurring in the judgment), the statute here refers to another law, the open-and-obvious doctrine. The invocation of the doctrine, without an express definition, serves to incorporate the meaning we have given it. MCL 8.3a (providing that words that "have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning") (punctuation omitted). As we have described it, the open-and-obvious doctrine "attacks the duty element that a plaintiff must establish in a prima facie negligence case." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992). In other words, with a few irrelevant exceptions, the "duty a possessor of land owes his invitees . . . does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers

so obvious and apparent that an invitee may be expected to discover them himself." *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500; 418 NW2d 381 (1988).

Therefore, the permission MCL 691.1402a(5) provides to municipal corporations to use the open-and-obvious defense represents a simple means of regulating the scope of the duty possessors of land owe to certain classes of individuals who come onto their property. As the majority here notes, at the time of the accident, the open-and-obvious defense was unavailable, and therefore defendant owed a duty to guard against open-and-obvious hazards. The effect of MCL 691.1402a(5), if applied to this case, would be that at the time the accident occurred, defendant did not owe plaintiff a duty to guard against the open-and-obvious hazard that injured plaintiff. The core conduct that the statute regulates is the duty of a land possessor with regard to a hazard at the time of the accident, not the land possessor's post-accident litigation posture.

## II. THE PROPER INTERPRETATION OF RETROACTIVE STATUTES

In light of the understanding of "retroactivity" described above, the question in this case is whether the statute, MCL 691.1402a(5), governs accidents that occurred before the statute's passage. The answer depends on the proper method for determining whether the statute is, in fact, retroactive. That method should be the same here as it is in any case of statutory interpretation: discovering the ordinary meaning of the statutory language. See *TOMRA of North America, Inc v Dep't of Treasury*, 505 Mich 333, 339; 952 NW2d 384 (2020) ("In every case requiring statutory interpretation, we seek to discern the ordinary meaning of the language in the context of the statute as a whole."). The question is thus

6

whether that meaning requires the statute to be applied retroactively, i.e., does the statutory text regulate accidents that occurred before its passage?

Despite our current use of multiple principles in addition to the text when determining retroactivity, we have long emphasized that the text is the primary criterion of whether a statute applies retroactively. See *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001) ("In determining whether a statute should be applied retroactively or prospectively only, '[t]he primary and overriding rule is that legislative intent governs,' " as evidenced by the statutory language.) (citation omitted). Accordingly, in finding that a statute does not apply retroactively, it has been critical to our analysis that no statutory language expressly commands such application. See *White v Gen Motors Corp*, 431 Mich 387, 398; 429 NW2d 576 (1988) ("We . . . find it significant that the Legislature omitted any reference to the retroactivity of [the statute at issue]."); *Van Fleet v Van Fleet*, 49 Mich 610, 613; 14 NW 566 (1883) (noting that the statute said nothing concerning events that had already transpired or rights that had already accrued). In one early case, for example, we simply said that "[t]here is nothing in the act itself from which we can gather any . . . intent" to apply the statute retroactively, and that was enough for us to conclude that the statute was "to have a prospective operation only . . . ." *Harrison v Metz*, 17 Mich 377, 382 (1868). One textual indication that a statute is not retroactive is the use of effective dates: "When it wishes to address the question of retroactivity, the Legislature has specifically done so *in addition to* providing for an effective date." *Selk v Detroit Plastic Prod*, 419 Mich 32, 35 n 2; 348 NW2d 652 (1984); see also *White*, 431 Mich at 399 ("Therefore, we are persuaded that providing a specific, future effective date

7

and omitting any reference to retroactivity supports our holding that [the statute at issue] is prospective in application.").

A longstanding presumption against retroactivity has guided our assessment of the text. The " 'general rule,' " we have noted, " 'is that a statute is to be construed as having a prospective operation only, unless its terms show clearly a legislative intention that its terms should operate retroactively.' " *Barber v Barber*, 327 Mich 5, 12; 41 NW2d 463 (1950), quoting *Angell v West Bay City*, 117 Mich 685, 688; 76 NW 128 (1898) (collecting cases). As a leading treatise explains, "a law is not construed as retroactive unless the act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application." 2 Singer, Sutherland Statutory Construction (7th ed, November 2020 update), § 41:4. Justice Cooley wrote that retroactive " 'legislation . . . is commonly objectionable in principle, and apt to result in injustice,' " except in limited circumstances; consequently, " 'it is a sound rule of construction which refuses lightly to imply an intent to enact it.' " *Reading Law*, p 261, quoting Cooley, Constitutional Limitations (1868), pp 62-63. The presumption thus requires the Legislature to craft clear language commanding retroactive application in order for a court to find that such application is warranted.

This presumption is not lightly dispensed with, and consequently, we are leery of reading a statute as retroactive based purely on the text's implications. We have said that retroactive application would not be found without express command or " 'necessary, unequivocal and unavoidable implication from the words of the statute taken by themselves and in connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt . . . .' " *Ramey v Michigan*, 296 Mich 449, 460; 296 NW 323 (1941),

8

quoting Endlich, Interpretation of Statutes (1888), § 271. In a similar manner, Justice Scalia rejected the argument that because two sections of the relevant statute were expressly prospective, other sections that lacked such an express provision and instead simply had immediate effect were to be read as retroactive. *Landgraf*, 511 US at 288 (Scalia, J., concurring in the judgment). He wrote, "[The] presumption is too strong to be overcome by any negative inference derived from" the absence of an express provision. *Id.* We have also clarified that if "the words of the statute are broad enough in their literal extent to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise, unless a contrary intention is unequivocally expressed therein." *Todd v Bd of Election Comm'rs*, 104 Mich 474, 478-479; 62 NW 564 (1895) (quotation marks and citation omitted).

Applying these principles to the present case, I agree with the majority's analysis of the text. The issue is whether MCL 691.1402a(5) gives a textual indication that it seeks to regulate activity occurring prior to its effective date that is sufficient to rebut the presumption against retroactivity. Nothing in the statute expressly purports to apply to accidents that predated its enactment. Instead, the statute bears an effective date of January 4, 2017, which is after the accident occurred. The statute's silence on retroactivity along with the effective date offers textual support for the conclusion that the statute is not retroactive. See *White*, 431 Mich at 399; *Selk*, 419 Mich at 35 n 2.

Nor is there any clear implication that could overcome the presumption against retroactivity. At best, it might be argued that the terms "civil action" and "defense" in MCL 691.1402a(5) could be read broadly enough to encompass defenses raised in any civil action that occurs after the statute's enactment, even if it involves an accident that happened

9

prior to enactment. But to overcome the presumption against retroactive application, it is not enough that the language could be read in a wooden, literal fashion to encompass earlier events; instead, the implication must be "unequivocal," *Todd*, 104 Mich at 478-479, or "unavoidable," *Ramey*, 296 Mich at 460 (quotation marks and citation omitted). Here, any implication arising from "civil action" and "defense" is not sufficiently clear. The statute itself, as noted above, regulates the defendant's duty at the time of the accident by permitting the open-and-obvious doctrine to be raised later as a defense. Yet, there is no language that directly reaches back to pre-enactment accidents themselves. Accordingly, the statute's bare use of the terms "civil action" and "defense" does not create a sufficiently strong implication that the text applies to pre-enactment accidents.

Consequently, the statute's text does not support its retroactive application.

## III. PROBLEMS WITH OUR CURRENT APPROACH

This should be the end of the story. But under our current approach, the textual meaning of the statute is only one of four principles to be considered.

> First, we consider whether there is specific language providing for retroactive application. Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. [*LaFontaine*, 496 Mich at 38-39.]

The first and most significant problem with our approach, then, is that it does not begin and end with the text, as interpreted in light of the longstanding presumption against retroactivity. Our caselaw mentioned above makes clear the need for strong textual

10

indications before a statute will be deemed retroactive. If the text fails to contain such indications, then I cannot fathom how the statute could be retroactive based on the other principles; conversely, if the text has such clear indications, sufficient to overcome the presumption, then I struggle to see how we could avoid interpreting the statute as having retroactive effect.

When the text answers the interpretive question, any approach that forces courts to carry the analysis beyond the text is an invitation to mischief. Take the present case, for example. The Court of Appeals accurately concluded that "[t]he lack of any language [in the statute] regarding retroactivity weighs in favor of prospective application only." *Buhl v Oak Park*, 329 Mich App 486, 496; 942 NW2d 667 (2019). By encouraging the Court of Appeals to go further than the text, our current approach resulted in an interpretive analysis resting heavily on observations that do not clearly relate to the text and on speculations about the Legislature's intent.

The Court of Appeals spent a great deal of space explaining why, under the third factor, retroactive application of the statute would not take away plaintiff's vested rights. *Id*. at 496-505. I fail to see why this observation—the merits of which I do not address because I do not believe we need to reach this principle—aids the cause of retroactivity. If there is nothing in the text that requires retroactivity, then the statute is not retroactive. The fact that retroactive application of the statute would not divest a plaintiff of rights cannot change the meaning of the text or overcome the presumption against retroactivity.[3]

---

[3] And, on the other hand, the possibility that the statute divests a plaintiff of rights will not transform the meaning of clear text—rather, as noted below, such a possibility is relevant to the interpretive endeavor only if the divestment raises grave constitutional concerns that require a court to consider whether the text can reasonably bear other interpretations.

The Court of Appeals' holding largely turned on the fourth principle, which involves speculative statements about legislative intent. I agree with the majority's analysis that the so-called *Brewer* restoration rule—a rule that the Court of Appeals developed here, under which a court perceives a legislative amendment to have been intended to undo a court decision and restore the status quo from before that decision—has no basis in our caselaw. See *Brewer v A D Transp Express, Inc*, 486 Mich 50; 782 NW2d 475 (2010). The restoration rule is premised on the notion that retroactivity can flow from the Legislature's unstated intentions, as revealed by a court-crafted narrative of the statute. See *Buhl*, 329 Mich App at 505-506 ("[I]f the Legislature adopts an amendment directed at a particular judicial decision, and through that amendment not only overrules the judicial decision but also reinstates the state of the law as it existed prior to the judicial decision, then the amendment is considered remedial and will be applied retroactively.").

Such a rule calls for an unhealthy dose of speculation. Largely on this basis, the United States Supreme Court has rejected a nearly identical argument that a statutory amendment was retroactive because it simply restored the understanding of the statute that prevailed before the Court's original decision interpreting the pre-amendment statute:

> Congress' decision to alter the rule of law established in one of our cases—as petitioners put it, to "legislatively overrul[e]"—does not, by itself, reveal whether Congress intends the "overruling" statute to apply retroactively to events that would otherwise be governed by the judicial decision. A legislative response does not necessarily indicate that Congress viewed the judicial decision as "wrongly decided" as an interpretive matter. Congress may view the judicial decision as an entirely correct reading of prior law—or it may be altogether indifferent to the decision's technical merits—but may nevertheless decide that the old law should be amended, but only for the future. Of course, Congress may also decide to announce a new rule that operates retroactively to govern the rights of parties whose rights would otherwise be subject to the rule announced in the judicial decision.

12

> Because retroactivity raises special policy concerns, the choice to enact a statute that responds to a judicial decision is quite distinct from the choice to make the responding statute retroactive. [*Rivers v Roadway Express, Inc*, 511 US 298, 304-305; 114 S Ct 1510; 128 L Ed 2d 274 (1994) (citation omitted).]

The Court also noted that its prior decision interpreting the statute did not change the statutory meaning but rather was an "authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Id*. at 312-313. Accordingly, the Court's prior decision interpreting the statute did not "change[]" the law that had previously prevailed—rather, that earlier decision "decided what [the statute] had *always* meant . . . ." *Id*. at 313 n 12. Finally, the Court noted that even if Congress's intent was to restore the law, the Court could not apply that intent without a "clear expression" of it in the text. *Id*. at 307.

These same principles are germane here. An intent to restore the law has no relevance unless the statutory text reflects that intent. Here, it does not. To discern such an intent absent textual support requires conjecture about why the Legislature chose to amend a statute. Such speculation disregards the principle that an authoritative interpretation of the statute establishes what the law has consistently meant since the time of enactment. Therefore, contrary to the Court of Appeals' suggestion in this case, an amendment seeking to overturn such an interpretation does not, without more, "reinstat[e] the *status quo ante* . . . ." *Buhl*, 329 Mich App at 506.

Our current approach poses a separate difficulty in the third principle, which reproduces our current definition of retroactivity. Because the third principle is simply our definition of retroactivity, I believe that this principle would be largely unnecessary were we to adopt the conception of retroactivity I laid down above: a retroactive statute is one

13

that seeks to regulate activity occurring before its passage. The present focus on vested rights introduces a concept "of much difficulty. . . . 'Few questions have troubled the courts more than the problem of what are vested rights. . . . A few courts have frankly recognized that policy considerations, rather than definitions, are controlling . . . .' " *Rookledge v Garwood*, 340 Mich 444, 456; 65 NW2d 785 (1954), quoting *Wylie v City Comm of Grand Rapids*, 293 Mich 571, 587; 292 NW 668 (1940).

One aspect of the confusion is that the criterion of vested rights seems to invoke constitutional concepts. The result is that the interpretive issue of what the statute means becomes conflated with the separate issue (not always raised or relevant) of whether the statute is constitutional or otherwise enforceable. We have contributed to this confusion by sometimes indicating that the third principle is a bar to interpreting a statute as retroactive if such application would impair vested rights. See *In re Certified Questions from US Court of Appeals for the Sixth Circuit*, 416 Mich 558, 572; 331 NW2d 456 (1982) ("The third rule states that retrospective application of a law is improper where the law 'takes away or impairs vested rights . . . .' ") (citation omitted). In the present case, for example, defendant analyzed the third principle largely under a constitutional framework, contending that the statute would be constitutional if applied retroactively. But as plaintiff acknowledges in reply, she has not challenged the constitutionality of the statute.

There are independent constitutional provisions and doctrines that might apply to render retroactive statutes unconstitutional. Most directly, "due process principles . . . prevent retrospective laws from divesting rights to property or vested rights," *Detroit v Walker*, 445 Mich 682, 698; 520 NW2d 135 (1994), although in certain areas, such as economic legislation, retroactive statutes need only meet the relatively lenient

14

rational-basis standard to pass constitutional scrutiny, see *Pension Benefit Guaranty Corp v R A Gray & Co*, 467 US 717, 730; 104 S Ct 2709; 81 L Ed 2d 601 (1984). Other relevant provisions include the federal Ex Post Facto Clause forbidding retroactive penal legislation and the Contracts Clause prohibiting retroactive legislation that impairs contracts. See *Landgraf*, 511 US at 266.

But when no such constitutional arguments have been raised, the issue is whether the statutory text retroactively extends to past events, not whether it can constitutionally do so. For that reason, absent a specific constitutional objection, we have not indicated that the Legislature is otherwise barred from enacting retroactive legislation. See, e.g., *Smith v Humphrey*, 20 Mich 398, 405 (1870) ("We do not understand it to be questioned [whether] it was competent for the Legislature to make the general provisions of the act [retroactive]. . . . The question is whether they have expressed an intention to that effect."). The United States Supreme Court has likewise observed that the statutory interpretation question is distinct from the constitutional question: "Absent a violation of one of those specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Landgraf*, 511 US at 267-268. In other words, a statute's "retroactive operation may, but will not necessarily, violate" a constitutional provision. *Reading Law*, p 262.[4] For this reason, too, the

_____

[4] See also 2 Singer, Sutherland Statutory Construction (7th ed, November 2020 update), § 41:5 ("It is misleading to use the terms 'retrospective' and 'retroactive,' as has sometimes been done, to mean an act is unconstitutional. The question of validity rests on further subtle judgments concerning the fairness of applying the new statute."); see Cooley, Constitutional Limitations (5th ed), p 456 ("There is no doubt of the right of the legislature to pass statutes which reach back to and change or modify the effect of prior transactions,

15

"antiretroactivity presumption is just that—a presumption, rather than a constitutional command . . . ." *Republic of Austria v Altmann*, 541 US 677, 692-693; 124 S Ct 2240; 159 L Ed 2d 1 (2004).

Consequently, the only issue directly before a court in a case such as the present one is what the statute means, i.e., whether the ordinary meaning of the text clearly shows that the Legislature intended the statute to apply retroactively. If the language is clear, then the statute must be interpreted as retroactive irrespective of constitutional infirmities that might independently render the statute unenforceable. Legislatures can, after all, pass unconstitutional statutes. This is not to say, however, that constitutional concerns will never be relevant to statutory interpretation. When the text is unclear and various reasonable interpretations are possible, courts should opt for an interpretation that avoids raising grave doubts about the statute's constitutionality. See *In re Certified Questions from US Dist Court, Western Dist of Mich, Southern Div*, 506 Mich 332, 409; 958 NW2d 1 (2020) (VIVIANO, J., concurring in part and dissenting in part). Thus, if the text as interpreted in light of the presumption remains murky, with different interpretations possible, the fact that one interpretation raises serious constitutional concerns will be relevant in determining whether to select that interpretation.

Even in cases without such constitutional doubts, if the textual meaning is obscure, a court might consider whether the statute changes or modifies duties or rights pertaining to past transactions. Cf. *Frank W Lynch & Co*, 463 Mich at 583 (noting that the statutory text controls retroactivity but that the presumption against retroactivity is "especially"

provided retrospective laws are not forbidden . . . by the State constitution, and provided further that no other objection exists to them than their retrospective character.").

16

strong when the statute would have these effects on past events).  This does not depart from a text-first focus but instead recognizes that the greater the impact of the retroactive application, the less likely it is that vague or unclear text will convey to a reasonable reader that the statute applies retroactively.  Cf. Cross, Statutory Interpretation (2005), p 187 (noting the interpretive principle in English law that retroactivity "may well be a matter of degree—the greater the unfairness, the more it is to be expected that Parliament will make it clear if that is intended") (quotation marks and citation omitted).

In the same way, the second and fourth principles might help focus the interpretation of unclear text, though their role is less clear.  For example, under the fourth principle, which concerns remedial legislation, we have articulated a "narrower" definition of remedial as meaning " 'legislation which is procedural in nature, i.e., it does not affect substantive rights.' "  *White*, 431 Mich at 397, quoting 3 Sands, Sutherland Statutory Construction (4th ed), § 60.02, p 60.[5]  Still, in a difficult case it might be worth considering

---

[5] We have sometimes labeled the fourth factor an "exception" to the antiretroactivity presumption and indicated that truly remedial, i.e., procedural, legislation would apply retroactively.  See, e.g., *Selk*, 419 Mich at 10, citing *Hansen-Snyder Co v Gen Motors Corp*, 371 Mich 480, 485; 124 NW2d 286 (1963).  More recently, however, we said that the fourth factor was a "so-called 'exception' " and rejected its application when the parties' substantive rights would be affected.  *Frank W Lynch & Co*, 463 Mich at 584; see also *Landgraf*, 511 US at 285 n 37 (noting that while some past caselaw suggested that remedial statutes should be applied to pending cases, it is not true for all remedial statutes because some can still cause harm).  We have likewise stated that we are "reluctant to apply this exception without extensive exploration of [the] legislative intent."  *Franks v White Pine Copper Div, Copper Range Co*, 422 Mich 636, 673; 375 NW2d 715 (1985).  Further, we have cast doubt on the usefulness of classifying a statute as remedial, saying that "such a characterization of the act, as a whole, provides no further insight into whether this particular amendment should be applied retroactively or prospectively," and because almost every statute could be called remedial, the label " 'is of little value in statutory construction unless the term "remedial" has for this purpose a more discriminate

17

whether the statute's focus is procedural. I would, of course, leave it to such a case—one with text that is difficult to decipher—to sketch the precise function of these principles.

Again, however, when the meaning is apparent from the text alone, resorting to these considerations or those in the third principle is unnecessary.[6] In such cases—and this is one of them—the analysis should end with the text.

## IV. CONCLUSION

I believe that our methodology for assessing whether a statute is retroactive is flawed. I would take this opportunity to clarify the basic meaning of retroactivity and reestablish the primacy of the text in the interpretive endeavor. In particular, I would clarify that application of a statute is retroactive when it regulates conduct that occurred prior to the statute's effective date. To apply this simple new definition of retroactivity, I would examine the text of the statute at issue to determine whether it purports to regulate such conduct, keeping in mind the strong presumption against retroactivity. If, after all this, the text remained unclear, I would then consider the remaining principles discussed in

---

meaning.'" *White*, 431 Mich at 396-397, quoting 3 Sands, Sutherland Statutory Construction (4th ed), § 60.02, p 60. That is why our definition of remedial is so narrow. Whether this principle should operate as a true exception to the antiretroactivity presumption and be considered in every case is unnecessary to resolve here because the statute at issue cannot be characterized as remedial, i.e., procedural; it affects the substantive rights and obligations of the parties, specifically the scope of the duty defendant owed to plaintiff. It is worth noting, however, that under the conception of retroactivity I established above, it would likely not be retroactive at all for a statute truly regulating court procedures to be applied to a case that arises before the enactment.

[6] My conclusion leaves the *LaFontaine* principles intact, albeit providing the last three with a more limited scope. Thus, under my framework, it would be unnecessary to overturn *LaFontaine*, which simply said that these were four principles to "keep . . . in mind." *LaFontaine*, 496 Mich at 38.

18

*LaFontaine*, including whether the statute merely relates to antecedent events, whether it affects rights or duties surrounding past expectations, whether constitutional questions would arise if the statute is applied retroactively, and whether the statute is procedural rather than substantive.

In the present case, the text is clear, and the presumption against retroactivity remains unrebutted. I therefore agree with the majority that nothing in the text suggests the statutory amendment at issue applies to accidents that occurred before its effective date. Consequently, the analysis in this case should stop there. For these reasons, I concur.

David F. Viviano

STATE OF MICHIGAN

SUPREME COURT

JENNIFER BUHL,

       Plaintiff-Appellant,

v                                             No. 160355

CITY OF OAK PARK,

       Defendant-Appellee.

---

CLEMENT, J. (*concurring in part and concurring in the judgment*).

       I agree completely with the result reached by the majority. I also join most of its analysis of the retroactivity factors from *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26; 852 NW2d 78 (2014), with the exception of Part III(C). As the majority notes, we hold today that the Court of Appeals erred when it held "that MCL 691.1402a(5) satisfies the third *LaFontaine* factor," meaning that we "could end our analysis here . . . ." I agree that we could, and therefore I would. I express no view regarding "the Court of Appeals' creation of the so-called *Brewer* restoration rule," but I do not believe that it "merits further review."

                                                     Elizabeth T. Clement
                                                    Brian K. Zahra

       CAVANAGH, J., did not participate because of her prior involvement as counsel for a party.

1